## Hilmar Stephany v. Gustav Castan and Louis Castan.

1. CONTRACTS—*Dependent Upon the Acts of Third Persons.*—When an obligation to pay money is dependent upon the action of a third person, over whom neither party to the obligation has control, such payment can not be exacted unless the specified act be performed.

Assumpsit, on the common counts. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH. Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed January 21, 1897.

NEWMAN, NORTHRUP & LEVINSON, attorneys for appellant.

SIGMUND ZEISLER, attorney for appellees.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The Columbian Moorish Palace Company was a corporation organized for the exhibition of wax figures and optical illusions at the World's Fair in Chicago.

Four persons were its promoters, viz., the appellant and Messrs. Zeisler, Hoffman and Hamburger.

The appellees, Castan Brothers, resided in Berlin, Germany, and were manufacturers and exhibitors of wax figures.

In August, 1892, a written agreement between Castan Brothers and the said Moorish Palace Company, was

entered into, at Berlin, whereby the former sold to the latter for 183,260 reichmarks (equal to about $44,000), certain articles then contained in the Panopticon conducted by Castan Brothers in Hamburg, Germany, and certain other articles to be manufactured by Castan Brothers, to be paid for as follows:

"Clause 6. The terms of payment are as follows: One-half of the above mentioned total purchase price must be deposited by October 1, 1892, at the Deutsche Bank, at Berlin, or at the National Bank of Illinois, at Chicago, and shall be paid over to Castan Brothers, on their delivery to the Columbian Moorish Palace Company of a document transferring to it the ownership in the articles situate at Hamburg and hereinabove mentioned. For the other half of the total purchase price, Castan Brothers agree to accept shares of the capital stock of the Columbian Moorish Palace Company, for their full nominal value, in the stead of payment. Said shares are to be deposited either at the Deutsche Bank, at Berlin, or at the National Bank of Illinois, at Chicago, for the benefit of Castan Brothers, with instructions to the banks, respectively, that the same are to be delivered to Castan Brothers as soon as the articles at Berlin and Hamburg are accepted by a trusted agent to be named by the company, and are delivered to the forwarding agent to be designated by the company, and the receipt of the forwarding agent shall serve to the respective banks as evidence of delivery. The said company herewith guarantees that the total capital stock issued by it is not larger than $300,000."

In September, 1892, the appellant was in Saxony, and on the tenth of that month received a cablegram from his Chicago banker, as follows:

"CHICAGO, September 9, 1892.
Hilmar Stephany, Wittgen, Prussia, Saxony.

Bond subscribers refuse going on Moorish Palace unless everybody gives up half stock. Hamburger, Hoffman, Zeisler consented. Cable authority likewise, otherwise everything lost.

WASMANSDORF."

Shortly after receiving the dispatch, the appellant went to Berlin to see Castan Brothers, and he testified that he there said to them, among other things: "I know you are deeply interested in this concern as contractors and stockholders, and that if I refuse to give up half of my stock, which I feel just now like doing, because I do not wish to be imposed upon, your investment, so far, which amounts to about 50,000 marks, will be lost to you. If I consent to give up half my stock, I must get some equivalent for it, because I have spent all my ready cash in the promotion of this enterprise, and I am now here without funds. Now, if I am compelled to give up half my stock, I want some compensation for it. Now, is it of sufficient interest to you to see the concern carried on? Then we will make an agreement. * * * You have a contract for 200,000 marks. You have so far invested in buying materials about 50,000 marks, or 60,000 marks, which will be a dead loss to you unless the contract is carried out, and it simply depends on my say so whether the company will go on or the whole thing go up in smoke."

The result of the interview and conversation is stated by appellant as follows; "In talking over the matter we ultimately agreed that they would pay me 5,000 marks if I would consent to cancel half of my stock. I had $40,000 worth of stock at that time, face value."

The parties thereupon entered into the following writing:

"We have bound ourselves to pay Mr. Hilmar Stephany the sum of 5,000 marks, only under the condition that the contract with the Columbian Moorish Palace Company of Chicago, requiring payment of the first installment in cash in the beginning of October of this year, will be punctually kept. Mr. Hilmar Stephany binds himself to return to Castan Brothers the sum of 5,000 marks as soon as the stock of the above company reaches par.

HILMAR STEPHANY.<br>GEBRUEDER CASTAN.

September 12, 1892."

And such writing formed the basis of the suit brought by appellant against the appellees, and from the judgment therein, in favor of the appellees, this appeal is prosecuted.

No part of the 5,000 marks mentioned in the writing of September 12, 1892, was ever paid.

In considering the effect of the writing between the parties, it is necessary to read it in connection with the contract between Castan Brothers and the Moorish Palace Company.

By the terms of that contract two payments were to be made, and only two, by the Palace Company : one of $22,000 in cash (one-half of 183,260 reichmarks), by a deposit of that amount at the Deutsche Bank, in Berlin, or at the National Bank of Illinois, in Chicago, "by October 1, 1892;" and the other, of an equal amount, at its nominal (par) value, of the capital stock of the Palace Company, when the bargained goods should be accepted by an agent of the company.

By the terms of the writing between the parties to this suit, the appellees bound themselves to pay the 5,000 marks to the appellant, "only under the condition that the contract with the Columbian Moorish Palace Company of Chicago, requiring payment of the first installment in cash in the beginning of October of this year, will be punctually kept."

Such condition refers, manifestly, to the cash payment of $22,000, to be deposited by the Palace Company, for the appellees, "by October 1, 1892," and its punctual payment was the essence of the promise to pay the 5,000 marks.

The inquiry that ensues is, was such deposit made ? The deposit of $22,000 was made by the Palace Company on October 6, 1892, but upon conditions variant from those provided by the contract between Castan Brothers and the Palace Company.

On September 13, 1892, the board of directors of the Palace Company adopted a resolution, without the sanction or knowledge, until subsequently, of Castan Brothers, as follows :

"Resolved, That the secretary be, and he is hereby, instructed to notify Castan Bros., at Berlin, that this company refuses to pay over to Castan Bros. the sum of $22,000 or thereabouts, on October 1, 1892, but instead will deposit said sum of money, together with a certificate of 220 shares of the capital stock of this company, in the National Bank of Illinois, at Chicago. Such money and such certificate to be paid over and delivered, respectively, to said Castan Bros. upon the delivery by them of the articles purchased as described in the contract of August 18, 1892."

Such resolution, or its effect, was under instructions to the secretary of the Palace Company, communicated to Castan Brothers, with something like a request for their consent to the modification of the contract, from a deposit as payment to one as security.

Probably after the letter of the secretary reached Castan Brothers, although not certainly so, they cabled to the Palace Company a dispatch, which was received on October 4th or 5th, 1892, as follows:

"Have ascertained deposit in National Bank of Illinois not made as promised in your letter. First make deposit, then talk about terms."

Subsequent to the receipt of that cablegram, the Palace Company deposited, on October 6, 1892, in the National Bank of Illinois, $22,000, upon the terms designated in its certificate of deposit, as follows:

"The National Bank of Illinois certifies that it has received this date, namely, 6th October, 1892, from the Columbian Moorish Palace Company, the sum of twenty-two thousand dollars, which sum is to be held by it as security for the payment to Castan Brothers of the sum of $22,000, as soon as they shall have delivered to the forwarding agent, to be designated by the Columbian Moorish Palace Company, the articles purchased and ordered by the Columbian Moorish Palace Company of Castan Brothers, as per contract of August 18, 1892."

It will be seen, by a comparison, that the terms recited in the certificate, are substantially like those in the resolu-.

tion of the directors of the Palace Company, concerning the money being as security for payment to Castan Brothers, and not as payment itself.

Apparently, Castan Brothers were paid one-half of the $22,000 some time in November, 1892, and the balance in February, 1893.

We will not discuss the argument that the payment of $22,000 to Castan Brothers depended upon the tender by them of a bill of sale of the articles contained in the Panopticon at Hamburg—or, in other words, that the tender of such bill of sale was a condition precedent to the payment being made, further than to say that before the time of payment had arrived the Palace Company had by resolution refused to make the deposit as a payment, and, further, that the Palace Company never appear to have made any such a claim. It is, also, doubtful if any tender of a bill of sale were otherwise necessary. It could have been no more than a formality at best. The first clause of the contract was, in itself, a bill of sale of the goods for future delivery, in January and February, 1893, and required nothing further than a delivery of the goods to vest a perfect title in possession to the bargained articles.

Nor is it necessary, in the view we take of the case, to consider the question of consideration for the agreement by Castan Brothers to pay appellant 5,000 marks.

We prefer to rest our decision upon the sole ground that, as between the appellant and Castan Brothers, the promise by the latter was but a conditional one, and that the condition was not performed.

The facts that we have stated need not be repeated.

Where an obligation to pay money is dependent upon the action of a third person, over whom neither party to the obligation has control, such payment can not be exacted unless the specified act be performed. Miller v. Wilson, 37 Ill. App. 399.

The condition here, that the Palace Company should punctually make the payment of $22,000, goes to the whole promise by the appellees, and the promise fell with the failure of the condition.

The case of Cincinnati, S. & C. R. Co. v. Bensley, 51 Fed. Rep. 738, is in point, the opinion there being delivered by Mr. Justice Brown, now of the United States Supreme Court. While there, as here, some "fireside" equitable facts appear, they are not such as a court of law can enforce.

The appellant, as shown by his own testimony, drove a sharp bargain with the appellees under the cover of circumstances, or a situation to which he held the key, and he can not complain in law if the appellees have chosen, as they were entitled to do, to stand upon the letter of their promise.

The judgment of the Circuit Court in favor of the appellees was right. It will, therefore, be affirmed.